**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy Deon BUTLER, Defendant–Appellant.**

No. 91–7128.

United States Court of Appeals, Tenth Circuit.

Nov. 23, 1992.

Joseph F. Wilson, Asst. U.S. Atty., Muskogee, Okl. (John Raley, U.S. Atty., with him on the brief), for plaintiff-appellee.

Robert Nigh, Jr., Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR and MOORE, Circuit Judges, and KELLY, District Judge.*

PATRICK F. KELLY, District Judge.

Billy Deon Butler was indicted on August 7, 1991 in the United States District Court for the Eastern District of Oklahoma. Butler, who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, was charged in the single count indictment with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Butler moved to suppress the firearm. The district court denied the motion on September 10, 1991. On October 15, 1991, the jury returned a verdict of guilty. Butler was subsequently sentenced to a term of 21 months, which was set to run concurrently with his earlier sentence. Butler was also sentenced to three years supervision after his release from custody.

Butler now appeals the district court's decision to deny his motion to suppress, contending that the seizure of the firearm represents a violation of his rights under the Fourth Amendment. We affirm.

On April 30, 1991, two Deputy United States Marshals and two Pushmataha County sheriff's officers arrived at Butler's rural home near Nashoba, Oklahoma to serve a warrant for his arrest. The Butler home was a trailer with a lean-to structure attached. The grounds were strewn with litter, including broken glass, several hundred beer cans, and the parts from various motor vehicles which also stood on the property.

The officers were met outside the trailer by Willis Bruce, who also lived in the trailer. Marshal Carroll Allberry told Bruce that the officers had a warrant for Butler's arrest, and asked if he knew where Butler was. Bruce indicated that Butler was inside the house. Butler then appeared, and Allberry directed him to come outside, where he was placed under arrest.

Marshal Allberry then had Butler place his hands behind his back, and searched him for weapons. While he handcuffed Butler, Allberry noticed that Butler had no shoes, and noticed broken glass on the ground near Butler's feet. Given the state of the ground, there was no route by which Butler might have been conveyed safely to the officers' vehicles.

Allberry asked Butler if he had any shoes. Butler said that he did, but that they were in the trailer. Bruce asked his girlfriend, who also was present, if she would get Butler's shoes. Allberry told Butler, "Well, let's go on in and get them." Allberry helped Butler inside the trailer, where Butler led him into a bedroom. Allberry noticed two .22 caliber long rifles in the trailer: one at the entrance to the trailer, and another in a gun rack in Butler's bedroom. Both weapons appeared to be inoperable. However, Allberry also noticed a shotgun which was inside Butler's bedroom and next to his bed.

---

* The Honorable Patrick F. Kelly, Chief Judge for the District of Kansas, sitting by designation.

After giving Butler his Miranda warnings, Allberry asked if this was Butler's bedroom, and Butler said that it was. Allberry told Butler that, as a convicted felon, it was illegal for him to possess a firearm. Butler said that he was not a convicted felon, that he was a probation violator. The gun was always there, Butler stated, and he used it to shoot hogs. The shotgun was seized and found to be loaded.

In denying Butler's motion to suppress, the district court noted in particular the decision of the Supreme Court in *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). In *Chrisman*, a campus police officer had stopped, outside his dormitory room, a university student who had a bottle of gin and appeared to be underage. The officer asked the student for identification. The student said that his identification was in his dormitory room, and asked to retrieve it. The police officer accompanied the student to the room, and there noticed indications of the possession of narcotics. In the subsequent prosecution for possession, the Supreme Court held that seizure of the evidence of narcotics was justified, since the officer was legally in the dorm room and the evidence of narcotics was in plain view.

Butler argues that *Chrisman* is distinguishable, since in that case the suspect invited the officer into the residence. Here, however, it was the law enforcement officer who, noticing that Butler was barefoot, initiated the entry into the trailer by telling Butler that he would have to go inside to put some shoes on.

This distinction is not persuasive. The evidence is uncontradicted that there was broken glass on the ground in the area where Butler was arrested. And the district court explicitly found that there was no evidence that the concern for Butler's welfare, as manifested by the police instruction for him to put on some shoes, was a pretext by which the police sought to enter the mobile home. That is, there is no evidence that the police action was done in bad faith.

Several courts have indicated that, even without an express invitation as in *Chris-*man, police may conduct a limited entry into an area for the purpose of protecting the health or safety of an arrestee. In *United States v. Titus*, 445 F.2d 577 (2d Cir.), *cert. denied*, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971), for example, the defendant was naked when he was arrested in his home by FBI agents. While getting clothing for the defendant, the agents discovered evidence connecting the defendant with a recent bank robbery. The admissibility of this evidence was upheld on appeal, the Second Circuit finding that the evidence was in plain view during the search for clothing for the defendant. The search for clothing was proper, the court held, since the agents "were bound to find some clothing for Titus rather than take him nude to FBI headquarters on a December night, ..." 445 F.2d at 579.

A similar situation arose in *United States v. Di Stefano*, 555 F.2d 1094 (2d Cir.1977). In that case, when the defendant was arrested outside her house, she was wearing only a nightgown and bathrobe. The police requested that the defendant get dressed, and she was accompanied into her house by a female police officer. While the defendant was dressing, the officer noted evidence connecting the defendant with a bank robbery. Citing *Titus*, the court upheld the seizure of this evidence. The court stated that "[t]he officers had a duty to find clothing for Sally to wear and to permit her to do so." 555 F.2d at 1101. *See also United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991) (noting general rule that an arrest of a person outside a residence does not authorize a warrantless entry of the residence, but identifying as an exception "when an officer accompanies an arrestee into a residence or room in order to allow the arrestee to obtain clothing or identification.").

This in no way creates a blank check for intrusion upon the privacy of the sloppily dressed. In *United States v. Anthon*, 648 F.2d 669 (10th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982), we held that entry into the defendant's residence cannot be effected, in the absence of consent or exigent circum-

stances, solely upon the desire of law enforcement officers to complete the arrestee's wardrobe. In that case, the defendant, who had been arrested in a hotel hallway after he had left his room, was clad only in his swimming trunks. After informing Anthon of his rights, he was taken back into his hotel room where he was allowed to change clothes and gather his personal effects. Anthon was then questioned in the hotel room for a period of 30 to 40 minutes. During the questioning, the officers discovered a vial of cocaine and a marijuana cigarette.

On appeal, the court found that the seizure of the narcotics was inconsistent with the principles of the Fourth Amendment and must be suppressed. There was no evidence that the defendant had asked to be allowed to retrieve his clothes or had consented to the entry of law enforcement officers into his hotel room. Moreover, the court noted, the facts failed to contain any suggestion of exigent circumstances dictating entry into the hotel room.

What separates the present case from the impermissible seizure in *Anthon* is the presence of a legitimate and significant threat to the health and safety of the arrestee. There is no evidence in the present record that the concern for the arrestee's health and safety was pretextual. To the contrary, the record is clear that taking Butler to the officers' vehicles would have posed a serious risk to his health.

Accordingly, we AFFIRM the decision of the district court.

SEYMOUR, Circuit Judge, dissenting.

I am unable to join the majority opinion. In my view, the instant case differs significantly from *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), and cannot be persuasively distinguished from *United States v. Anthon*, 648 F.2d 669 (10th Cir.1981). Accordingly, I would hold that the evidence discovered inside Mr. Butler's home must be suppressed.

The police in this case entered Mr. Butler's home without consent and without a warrant.

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.*

*Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980) (emphasis added) (citation omitted); *see also United States v. Maez*, 872 F.2d 1444, 1450–51 (10th Cir.1989); *United States v. Aquino*, 836 F.2d 1268, 1271–72 (10th Cir.1988); *United States v. Morgan*, 743 F.2d 1158, 1161 (6th Cir.1984).

As *Payton* clearly emphasizes, police may enter a home without a warrant only when exigent circumstances are present. We have defined exigent circumstances as arising when

(1) the law enforcement officers ... have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search [is not] motivated by an intent to arrest and seize evidence, and (3) there [is] some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

*United States v. Smith*, 797 F.2d 836, 840 (10th Cir.1986); *see also Aquino*, 836 F.2d at 1271–72. As an exception to the warrant requirement, exigent circumstances must be "jealously and carefully drawn." *Aquino*, 836 F.2d at 1270; *Smith*, 797 F.2d at 841.

[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and "the burden is on those seeking the exemption to show the need for it."

*Smith*, 797 F.2d at 841 (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759–60, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979)). The government's burden of establishing that sufficient exigent circumstances exist to justify warrantless entry "is particularly heavy where the police seek to enter a suspect's home ... because warrantless seizures inside a home are presumptively unreasonable." *Maez*, 872 F.2d at 1452; *see also Aquino*, 836 F.2d at 1271.

In this case, the sole circumstance upon which the majority relies is the fact that Mr. Butler was arrested barefooted in a yard that was littered with flattened beer cans and some broken glass. However, the evidence is undisputed that Mr. Butler and his companions, who were also barefooted, had just walked back and forth across the yard without injury to go to the river to bathe. Moreover, Mr. Butler did not express concern about the possibility of injury to his bare feet and did not request the opportunity to put on his shoes.

In *Anthon*, the defendant was arrested in the hallway of his hotel dressed in bathing trunks and taken back to his room to change clothes. We held that "[t]he arrest in the hotel hallway did not provide exigent circumstances justifying a warrantless search of the hotel room." 648 F.2d at 675. In so doing, we pointed out that the officers were not responding to an emergency call, were not in hot pursuit of a fleeing felon, and were not acting to prevent the destruction or removal of evidence. *Id.* Significantly, we emphasized the lack of evidence that "Anthon requested to be returned to his room or that he consented to the officers' entry into the room." *Id.* In this regard, we said:

Although the trial court record may very well have established that Anthon requested that he be allowed to re-enter the hotel room to change his clothes and gather his personal effects if the trial attorneys had properly pursued interrogation in this regard, the fact is that there is nothing in the record before us to indicate whether such a request was made. On the contrary, the record simply indicates that immediately following Anthon's arrest the officers returned him to his room. Accordingly, the warrantless entry into Anthon's hotel room was violative of his rights secured by the Fourth Amendment.

*Id.* at 676.

With *Anthon* and *Chrisman* as guides, it is clear to me that the government here has not established sufficient exigent circumstances to legitimize the warrantless entry into Mr. Butler's home. *Chrisman* provides that a police officer has a right to accompany an arrested defendant into his room when he requests to go there, but *Chrisman* cannot, under *Payton*, stand for the proposition that the officer may take an arrestee into his house without consent. The analysis in *Chrisman* is fully dependent upon the defendant's *request* to return to his room, *see Chrisman*, 455 U.S. at 6 n. 3, 102 S.Ct. at 816 n. 3, because absent such request the police officer had no right to cross the threshold. The plain view exception to the warrant requirement is, of course, premised on the officer viewing the evidence "in a place where the officer has a right to be." *Id.* at 6, 102 S.Ct. at 816. The district court in the present case found neither a request by Mr. Butler that the officer take him into his house, or his consent. *Accord Morgan*, 743 F.2d at 1164 (*Chrisman* not applicable when arrestee did not invite police to accompany him to his room).

In relying on *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991); *United States v. Di Stefano*, 555 F.2d 1094 (2d Cir.1977); and *United States v. Titus*, 445 F.2d 577 (2d Cir.), *cert. denied*, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971), the majority builds on a house of cards that falls with one slight breath. The statement in *Brown* does no more than recite the holding in *Chrisman*, and is pure dicta

in any event because no officer accompanied anyone into his home to obtain clothing or identification in that case. The court in *Di Stefano* relied only on *Titus*, a controlling case in the same circuit. *Titus* involved the warrantless entry into the apartment of the defendant's girlfriend to prevent the defendant from escaping arrest. The court held there that preventing escape constituted exigent circumstances for entering the apartment. *Titus* is clearly distinguishable on its facts. The warrantless entry of a home to prevent the escape of a defendant the police have probable cause to arrest is not analogous to an entry to obtain shoes for a barefoot arrestee who does not request them. *Titus* thus does not provide support for the police entry of Mr. Butler's home in this case, especially given this court's strong statements in *Anthon* that such an entry is prohibited without exigent circumstances or consent.

I am unwilling to dilute the concept of exigent circumstances, particularly to justify the warrantless entry into a home. The officer here testified that Mr. Butler did not suggest that they go inside to retrieve his shoes; instead, the officer testified that he said to Mr. Butler, " 'Let's go inside' ... 'to get your shoes,' " rec., vol. II, at 14. Taking an arrestee in bare feet across a littered yard he has just traversed safely presents no greater exigency than taking an arrestee to the police station in his bathing suit. Indeed, in my view the majority trivializes an exception to the warrant requirement that should be "jealously and carefully drawn." I would hold that the warrantless entry of Mr. Butler's home violated the Fourth Amendment.