**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-21060

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

VERSUS

BRYAIN C. WILSON,

Defendant - Appellee.

Appeal from the United States District Court
For the Southern District of Texas

September 11, 2002

Before WIENER, EMILIO M. GARZA, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

We are asked whether the district court erred in suppressing evidence of police officers' seizure of firearms after they effected a warrantless entry into an apartment. We vacate and remand.

## I.  Background.

On January 3, 1999, Doretta Bailey was taken from a Houston, Texas, apartment by two armed men. One was identified as Alonzo

1

Jackson, characterized by the Appellee, Bryain Wilson, as Bailey's "common-law husband." The two have eight children together. The other armed man was unidentified. Jackson allegedly pointed a firearm and issued a threat against another person present in the apartment with Bailey, Jessie Johnson. On January 4, Bailey made a complaint and Houston Police Officer Robert Brown commenced an investigation. On January 5, the Harris County District Attorney's Office filed an aggravated assault charge against Jackson for allegedly pointing the firearm at Johnson. A state arrest warrant issued. In the meantime, Bailey told Officer Brown and other officers that she had not been kidnaped, was with Jackson of her own volition, and that they, with their eight children, were together "as a family."

Officer Brown and other officers went to Jackson's apartment in Houston the afternoon of January 5. They identified Jackson's car being driven down the street and ascertained that Jackson was not driving it. At that point, Doretta Bailey exited Jackson's apartment and walked toward the officers. In response to Officer Brown's question, she told him that Jackson was inside his apartment. As Officer Brown approached the apartment, Jackson stepped outside, clad only in boxer shorts, and met the officers about five to six feet outside the apartment. The apartment door was partially open. Officer Brown arrested Jackson and handcuffed him there. He then asked Jackson if anyone else was inside the

apartment and Jackson answered "yes."  Officer Brown did not ask for and Jackson did not give consent to enter the apartment, nor did Bailey.

Officer Brown entered the apartment and found Bryain Wilson lying on the floor with a comforter over him.[1]  Officer Brown ordered him to stand up and, upon Wilson's doing so, Brown observed a pistol sticking out of his pocket.  A search revealed that Wilson had another pistol in his other pocket.  Both were unloaded, though there were rounds available elsewhere in the apartment.  Officer Brown arrested Wilson.

Wilson was charged with possessing a firearm in violation of 18 U.S.C. 922(g)(1), as a person previously convicted of a crime punishable by imprisonment for a term exceeding one year.  The instant challenge to the legality of the officers' search of Jackson's apartment ensued and a suppression hearing was conducted on September 7, 2001.

Officer Brown testified that he entered the apartment for two reasons.  First, "[i]t's just normal procedure [for] officer safety purposes that we enter any residence . . . . [W]e want to make sure it is safe."  Second, he wanted to get some clothing for Jackson

---

[1]    The Government originally argued that Wilson had no standing to challenge the search of the apartment.  The district court, however, found that Wilson was an overnight guest and therefore had an expectation of privacy sufficient to provide standing, citing *Jones v. United States*, 362 U.S. 257, 265-67 (1960), *rev'd on other grounds*; *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990); *Minnesota v. Carter*, 525 U.S. 83, 89 (1998).

3

prior to transporting him.

The district court ruled that exigent circumstances did not exist for the officers' entry into the apartment; that Doretta Bailey, who had just exited the apartment, could have re-entered to obtain Jackson's clothing; and that the officers' leading Jackson back into the apartment did not "trump" the Fourth Amendment so as to permit the search. Therefore, the court suppressed the evidence of Wilson's possession of the firearms. The district court's order was signed and dated on Friday, September 14, 2001. It was entered on the district court docket on Monday, September 17.[2] *See United States v. Wilson*, No. 00-CR-298, at 5-6 (S.D. Tex. Sep. 17, 2001). The Government filed its notice of appeal on October 16, 2001, challenging the district court's ruling on the independent grounds that the officers made a permissible safety sweep of the apartment and that they permissibly entered the apartment to obtain appropriate clothing for Jackson.

## II. Jurisdiction.

We commence by determining whether we hold jurisdiction to determine the appeal as it has been filed.

---

[2] The following date and entry appears on the district court docket. It indicates the date of the order, 09/14/01, docket entry number 26, and the date of entry onto the docket, 09/17/01:

9/14/01    26    ORDER granting [17-1] motion to suppress as to Bryain C Wilson (1) (Signed by Judge Kenneth M. Hoyt), entered. Parties ntfd. (ck) [Entry date 0   9   /   1   7   /   0   1   ]

4

Wilson argues that the Government filed its notice of appeal out-of-time and therefore the appeal is barred. Specifically, Wilson contends that although the Government complied with FED. R. APP. P. 4(b), its appeal was not timely filed under 18 U.S.C. § 3731, which Wilson asserts is the controlling jurisdictional statute.

The federal government may appeal an adverse judgment in a criminal case only if authorized by federal law. *United States v. Truesdale*, 211 F.3d 898, 904 (5th Cir. 2000). Section 3731 is the authorizing statute. *Id.* n.6. Rule 4(b) procedurally governs appeals by the government in criminal cases.

Rule 4(b)(i) requires that "[w]hen the government is entitled to appeal, its notice of appeal must be filed in the district court within 30 days after . . . : (i) the entry of the judgment or order being appealed . . . ." Section 3731 authorizes that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . ." and requires that "[t]he appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted." 18 U.S.C. § 3731. Additionally, it provides that "[t]he provisions of this section shall be liberally construed to effectuate its purposes." *Id.*

The district court's written order was signed and dated

5

September 14, 2001, and was entered on the district court docket on September 17. The Government filed its notice of appeal on October 16, 2001. That is 32 days after the date of the order but only 29 days after the order was entered on the docket.

The contention is, whether the timing of the notice of appeal depended on the *entry* of judgment, per FED. R. APP. P. 4(b), or on the *rendering* of judgment, per § 3731, and if the latter, when is a judgment *rendered*?

Coincidentally, this precise issue was decided by the Ninth Circuit in an opinion issued on the very day that this case was presented at oral argument before us. In *United States v. Kim*, 298 F.3d 746, 2002 WL 1784103, at *2 (9th Cir. Aug. 5, 2002), the court examined a motion to dismiss by two defendants claiming that the same § 3731 *render* versus Rule 4(b) *entry* issue made the government's notice of appeal in that case untimely. The court noted that 28 U.S.C. § 2072(b)[3] "expressly instruct[s] as to the Rules that 'All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.'" On that basis, the court held that "[t]he Rule trumps the statue. No conflict exists because § 2072 has abolished it." *Id*. Although under FED. R. APP. P. 1(b), the Rules "do not extend or limit the jurisdiction of the court of appeals," in the Ninth Circuit, § 3731 is not a jurisdictional statute with reference to the time for

---

[3] The Rules Enabling Act.

6

appeal. *Id*. Therefore, the government's appeals in those cases were timely.

This holding comports with our jurisprudence as well. Similar to the Ninth Circuit, we do not hold the timing constraints of § 3731 to be jurisdictional, although our holdings have been specifically aimed at the statute's requirement for the government to certify that its appeal is not for the purpose of delay. *United States v. Smith*, 135 F.3d 963, 967-68 (5th Cir. 1998); *United States v. Crumpler*, 507 F.2d 624 (5th Cir. 1975). In this circuit, FED. R. APP. P. 4 "governs the time period during which a[ notice of appeal] may be filed. 'A timely notice of appeal is necessary to the exercise of appellate jurisdiction.'" *Truesdale*, 211 F.3d at 902 (quoting *United States v. Cooper*, 135 F.3d 960, 961 (5th Cir. 1998)).

Furthermore, we have recognized that where a conflict exists between a Rule and a statute, the most recent of the two prevails. *Jackson v. Stinnett*, 102 F.3d 132, 134-36 (5th Cir. 1996). There, we noted that the Rules Enabling Act, 28 U.S.C. §§ 2071-72, delegates rule promulgation authority over practice and procedure for United States courts to the Supreme Court. *Id*. at 134. Regardless, Congress retains "an integral, albeit passive, role in implementing any rules drafted by the Court." *Id*. There are two limits to Congress's power to amend the Federal Rules of Appellate Procedure. First, the Rules Enabling Act's "abrogation clause"

7

stipulates that all laws in conflict with federal procedural rules "shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b); *see also Kim, supra,* 2002 WL 1784103, at *2. This does not invalidate an earlier, conflicting rule, but is read to mean that an offending statute will not have further effect after the Rule takes effect. 102 F.3d at 135. The second limitation is the general disfavor with which we view implicit amendment or repeal of statutes. *Id.* Although "repeals by implication are not favored," *id.* (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987)), we also recognize that "[w]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Id.* (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936)). We thus view a Federal Rule of Appellate Procedure the same way that we do a federal statute.

There is a difference between *rendering* a judgment and *entering* a judgment. As defined in Black's Law Dictionary, rendition of judgment is distinct from entering or docketing.

> *Render judgment.* To pronounce, state, declare, or announce the judgment of the court in a given case or on a given state of facts; not used with reference to judgments by confession, and not synonymous with "entering," "docketing," or "recording" the judgment. Judgment is "rendered" when decision is officially announced, either orally in open court or by memorandum filed

8

with clerk. Wooldridge v. Groos Nat. Bank, Tex. Civ. App., 603 S.W.2d 335, 344 [Tex. Civ. App. 1980].

BLACK'S LAW DICTIONARY 1296 (6th ed. 1990). The distinction carries no difference in this case.

The Federal Rules of Appellate Procedure were promulgated by the Supreme Court following Congress's review by an order entered December 4, 1967, making them effective on July 1, 1968. *Stinnett*, 102 F.3d at 135. They were last amended, including Rule 4, by order entered April 24, 1998, effective December 1, 1998.

Section 3731 was enacted in 1948 and most recently amended in 1994. The term "rendered" goes back to its predecessor Criminal Appeals Act, then-18 U.S.C. § 682, which required "that any appeal to this court which it authorizes be taken 'within thirty days after the decision or judgment has been rendered . . . .'" *See United States v. Hark*, 320 U.S. 531, 533 (1944). In trying to determine the date from which the 30 days must run, the Supreme Court noted then that it was "without the benefit of a rule such as Rule 58 of the Federal Rules of Civil Procedure, . . . , which provides that 'the notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry." *Id*. at 534. We are sanguine in our presumption that the Court considered this issue in determining a date certain from which to start the 30-day clock for Rule 4(b) under its rule-promulgating authority.

9

In any event, the Rules were promulgated after § 3731 was enacted; the Rules, including Rule 4(b), have been amended more recently than § 3731; and, the terms *rendered* and *entered* date to the respective establishment of the Criminal Appeals Act and the Rules, the latter being the most recent. When taken with the final line of § 3731, that it will be "liberally construed to effectuate its purposes," we have no difficulty in holding that Rule 4(b) trumps § 3731 regarding the date from which to run the 30-day clock for filing a notice of appeal.

On that basis, the Government's appeal in this case was timely filed and we have jurisdiction to hear the appeal.

## III. Standard of Review.

When considering a ruling on a motion to suppress, we review questions of law *de novo* and factual findings for clear error. *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002); *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). A finding is clearly erroneous if the court is left with the "definite and firm conviction that a mistake as been committed." *Hernandez*, 279 F.3d at 306 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Additionally, the court views the evidence in the light most favorable to the party that prevailed in the district court. *Hernandez*, 279 F.3d at 306; *Jones*, 234 F.3d at 239. The district court may be affirmed on any basis established by the record. *United States v. McSween*, 53 F.3d 684, 687 n.3 (5th

10

Cir.), *cert. denied*, 516 U.S. 874 (1995).

## IV. Analysis.

The Government argues that the police officers were faced with exigent circumstances on two bases, either of which justified their warrantless entry into Jackson's apartment. First, the Fourth Amendment permits brief protective sweeps to ensure the safety of the officers, such as this one of the apartment five to six feet away, where Jackson had told officers there was someone else present. Second, the officers were justified in entering the apartment to get clothing for Jackson, who was wearing only boxer shorts.

## A. Protective Sweep Under Exigent Circumstances.

The standard for whether a police officer may make a protective sweep following an arrest is "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *See Maryland v. Buie*, 494 U.S. 325, 327 (1990)(internal quotations and citations omitted). This circuit looks to the totality of the circumstances surrounding the officers' actions and "review[s] the entirety of the agents' investigative tactics, particularly those leading up to the exigency alleged to have necessitated the protective sweep" when determining whether

11

exigency exists to justify a warrantless entry. *United States v. Howard*, 106 F.3d 70, 74 (5th Cir. 1997)(quoting *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995)).

We extend the warrantless protective sweep authority to the inside of "a suspect's house 'even if the arrest is made near the door but outside the lodging' if the arresting officers 'have reasonable grounds to believe that there are other persons present inside who might present a security risk.'" *See United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001)(quoting *United States v. Merritt*, 882 F.2d 916, 921 (5th Cir. 1989)). In *Watson*, police officers were concerned that illegal drugs would be destroyed inside the suspect's house if they waited for a warrant. Also, "the officers believed that there was a possibility that [the suspect] might have additional accomplices who were still inside the house and could pose a threat to the officers' safety." *Watson*, 273 F.3d at 603 (emphasis added). We upheld the validity of the protective sweep on the officers' belief even though the factual basis for the belief was disputable. *Id.*

In *Howard*, we upheld a finding of exigency on grounds of, *inter alia*, fear for the officers' own safety and the safety of others, and the possibility of third persons inside the arrested suspect's house being alerted to police presence outside by the gathering of a crowd. Officers had arrested the suspect on the porch of his house and proceeded inside on a warrantless entry.

12

The officers articulated a fear that persons involved in drug activity going into and out of the house could be armed and that "just merely dealing in narcotics is enough for [the testifying officer] to believe that [the suspect has] the potential for violence and to have a weapon." *Howard*, 106 F.3d at 74-75. We held that "the absence of a particularized fear [] is not controlling," *Id.* at 75, and upheld the exigency because of the officers' experience-based belief in the drug context.

Additionally, although there was no direct evidence that the suspect was alerted to the police presence, *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993), there was sufficient circumstantial evidence to support the finding of exigency. That is, the suspect had only been under surveillance for a short time, there were two stops made by police of cars leaving his residence, and there was a crowd, including police officers, gathered in front of his home. In combination with the known narcotics-related traffic pattern in and out of the home, the officers were justified in their belief that the suspect and potential third persons were notified of their presence and that narcotics evidence could be destroyed or removed. *Howard*, 106 F.3d at 76-77.

Officer Brown's testimony was that "[i]t's just normal procedure [for] officer safety purposes that we enter any residence . . . . [W]e want to make sure it is safe." Wilson argues that this does not express a "reasonable belief based on specific and

13

articulable facts" and inferences therefrom, *Buie*, 494 U.S. at 327, upon which exigency may be founded.

There is no general security check exception to the warrant requirement. *Kirkpatrick v. Butler*, 870 F.2d 276, 281 (5th Cir. 1989). Here, however, at the time of Jackson's arrest, Officer Brown knew that Jackson was the suspect involved in the assault against Jessie Johnson and that Jackson had been armed at that time; that Jackson had just exited his apartment and was not carrying the firearm at the time of his arrest; that Jackson had an unknown accomplice who had also been armed; that Jackson and Bailey were living together "as a family"; that the two of them had eight children; and that an unknown person was inside Jackson's apartment, the open door to which was five to six feet away. These are specific and articulable facts on which Officer Brown, and his fellow officers, could draw the inference that there was a likelihood of firearms inside the apartment, that Jackson's accomplice from two days before could be the unknown person inside the apartment with access to the firearms, that one of Jackson's children could be inside the apartment with access to the firearms, that either the accomplice or the child might be hostile to the officers' arrest of Jackson, and that nothing but an open door stood between the officers, Bailey, and possibly other bystanders, and harm's way. Furthermore, the presence of the officers on the street, having stopped Jackson's car, apparently attracted Bailey's

14

attention, drawing her out to speak to the officers; in fact, Jackson followed her out. That is grounds to infer that whoever else was inside the apartment could also have been attracted by the officers' presence.

On those facts and inferences, we find that exigent circumstances existed to justify the officers' warrantless entry to Jackson's apartment for the purpose of conducting a protective sweep.

## B.  Requirement for Clothing as Exigent Circumstance.

The Government also argues that the officers' need to get clothes for Jackson constituted exigent circumstances permitting their warrantless entry into Jackson's apartment. This circuit has not addressed the issue; the Government offers cases from the Second, Fourth, and Tenth Circuits in support of its position.

In *United States v. Di Stefano*, 555 F.2d 1094 (2d Cir. 1977), officers received identifying information from a confessed bank robber about the identity of an accomplice and proceeded to her apartment. They were admitted to the apartment by the suspect or by one of her children and arrested her inside the apartment. She was wearing a nightgown and bathrobe. The officers asked her to get dressed and an officer accompanied her to her bedroom. When the suspect opened her closet for clothes, the officer observed a bank bag containing money in plain view at the bottom of the closet. The district court denied a motion to suppress the

evidence, ruling that "[t]he officers had a duty to find clothing for [the suspect] to wear or to permit her to do so," that it was appropriate for an officer to accompany her to ensure that she did not destroy evidence or procure a weapon, and that the officer's observance of the bank bag was "inadvertent." *Id.* at 1101.

In *United States v. Butler*, 980 F.2d 619 (10th Cir. 1992), officers executed an arrest warrant outside a suspect's trailer home. Noticing that the suspect was not wearing shoes and that the ground was strewn with broken glass, hundreds of beer cans, and other injury hazards, with no clear route back to the police car, they accompanied him inside the trailer to get shoes. In doing so, they discovered a loaded shotgun in his bedroom and other firearms inside the trailer. The suspect was a convicted felon who could not legally possess firearms. The district court denied a motion to suppress, and the Tenth Circuit affirmed on the grounds that an exigency existed to obtain shoes to protect the suspect from harm by walking on the broken glass and that there was nothing to suggest that the officers' interest was merely pretextual to justify entering the trailer. *Id.* at 622. In so doing, however, the court noted that "[t]his in no way creates a blank check for intrusion upon the privacy of the sloppily dressed," *id.* at 621, and noted that accompanying an arrested suspect clad only in a swim suit into his hotel room to change led to an unconstitutional seizure of narcotics, citing *United States v. Anthon*, 648 F.2d 669

16

(10th Cir. 1981). The court noted that in *Anthon*, "the facts failed to contain any suggestion of exigent circumstances dictating entry. . . ." *Butler*, 980 F.2d at 622.

In *United States v. Gwinn*, 219 F.3d 326 (4th Cir. 2000), the Fourth Circuit upheld a district court's denial of a motion to suppress in a situation similar to *Butler*. In that case, officers responded to an urgent phone call relating a threat of death. On arrival at the couple's trailer, they called the suspect out, arrested him, and placed him in their cruiser. The suspect wore only pants. They then conducted a legal sweep of the trailer out of concern for the safety of the wife and child inside. They exited the trailer and later reentered it to obtain boots and a shirt. They discovered a pistol, which had been used to threaten the wife, inside one of the boots. The suspect was a convicted felon prohibited from possessing a firearm. The district court denied a motion to suppress. The Fourth Circuit determined that the officers' interest in obtaining boots and a shirt for their suspect arrested outside his trailer home was "more than 'the desire of law enforcement officers to complete the arrestee's wardrobe.'" *Id.* at 333 (quoting *Butler*, 980 F.2d at 621-22). The Fourth Circuit thus ruled that "an officer is authorized to take reasonable steps to address the safety of the arrestee and that the arrestee's partially clothed status may constitute an exigency justifying the officer's temporary reentry into the arrestee's home

17

to retrieve clothes reasonable calculated to lessen the risk of injury. . . ." 219 F.3d at 333.

Other circuits have held that there is no exigency to entering a home for the purpose of finding clothing. In *United States v. Kinney*, 638 F.2d 941 (6th Cir. 1981), the court held unconstitutional the entry of law enforcement agents into a suspect's house, after arresting the suspect outside the house, because the suspect was only partially clothed. Because "[t]he defendant did not request permission to secure additional clothing and did not consent to an entry of his home," entry could not be justified on the grounds of obtaining clothing. *Id.* at 945.

Additionally, in *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983), the Ninth Circuit suppressed evidence obtained while the suspect dressed. The suspect had been arrested outside of his hotel room, wearing only underwear, and had been handcuffed and placed in a chair inside the room. He eventually asked to be allowed to dress. While he did so, the officers observed narcotics in the room. The Ninth Circuit noted that the suspect did not ask to be allowed to dress until after the officers had taken him into the room without consent. Therefore, "[a]bsent such a 'specific request or consent,' the officers' entry was unlawful." *See id.* at 1016 (quoting *Anthon, supra,* 648 F.2d at 675 and further citing *Kinney*, 638 F.2d at 945).

In Wilson's case, Jackson was arrested after having exited his

18

apartment wearing only boxer shorts. There is a difference between a man standing outside his hotel room in a swimsuit and a man on a public sidewalk, clad in his boxers, and handcuffed. This is also not a case where the officers entered the apartment while allowing the arrestee to literally cool his heels until requesting to be allowed to get dressed. The officers sought to provide clothing against the possibility of personal injury to their charge. Jackson may not have been surrounded by broken glass in a trailer park, but the hazards of public sidewalks and streets pose a threat of injury to the feet and other exposed areas of the body. Even without considering any issue of "common decency" in transporting a person in underwear to a jailhouse or police station, we hold that in a situation such as this, the potential of a personal safety hazard to the arrestee places a duty on law enforcement officers to obtain appropriate clothing. For that reason, we hold that exigent circumstances existed for the officers to enter Jackson's apartment without a warrant to obtain clothing for him.

## V. Conclusion.

Because the officers in this case acted under exigent circumstances, the evidence of Wilson's possession of a firearm was admissible. On that basis, we VACATE the order of the district and REMAND.

19