United States Court of Appeals
Fifth Circuit

**F I L E D**

October 20, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-41377

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RAUL RAFAEL ARCE-JASSO,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant United States of America (the "Government") seeks review of the district court's judgment of acquittal in favor of Defendant-Appellee Raul Rafael Arce-Jasso ("Arce-Jasso") on possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The Government also seeks review of the district court's denial of the Government's motion for reconsideration of its order granting Arce-Jasso's motion to suppress the cocaine. Because this Court finds we do not have appellate jurisdiction to review either the judgment of acquittal or the denial of the motion for

reconsideration of the suppression, we DISMISS the Government's appeal.

**BACKGROUND**

In the early evening hours on February 20, 2002, Arce-Jasso drove a 1996 Mercury Cougar to the border patrol checkpoint located on I-35, 15 miles north of Laredo, Texas. Arce-Jasso pulled into the primary inspection lane, which Agent Jesus Garcia ("Garcia") was manning. When Arce-Jasso pulled up, Agent Garcia questioned him about his citizenship. Arce-Jasso responded in Spanish that he was a U.S. citizen and presented a birth certificate indicating he was born in Laredo and a photo ID (not a driver's license). Agent Garcia examined the items and believed Arce-Jasso was a U.S. citizen at that time. He then proceeded to ask Arce-Jasso two more questions in Spanish: (1) where he was going and (2) who owned the Mercury Cougar. Arce-Jasso answered that he was going to San Antonio and that he had bought the car about a week ago.[1] Just then, Arce-Jasso started pulling out of the checkpoint. Agent Garcia called after him to ask if he wanted his documents back, and Arce-Jasso stopped. At that point, Agent Garcia referred Arce-Jasso to the secondary inspection area where a canine alerted and

---

[1]Agent Garcia stated he asked these questions because certain cities are common destinations for illegal aliens and "disposable" vehicles are often used for smuggling drugs or aliens. He also stated that Cougar vehicles have been used for alien smuggling because of their large trunk and a void in the quarter panels, and freshly cleaned cars, such as Arce-Jasso's, suggest they have been wiped down for residue or odor.

agents discovered cocaine hidden in the side panel of the car. The entire episode took about five minutes.

On March 19, 2002, a Laredo federal grand jury returned an indictment charging Arce-Jasso with possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Arce-Jasso pleaded not guilty before a magistrate judge on March 28, 2002. Arce-Jasso filed a motion to suppress the cocaine on April 9, 2002, arguing his detention at the border checkpoint was unconstitutionally lengthy. After a hearing, the district court denied this motion by written order entered May 23, 2002. A bench trial took place on June 3, 2002. The parties entered a joint stipulation of fact that same day. During the trial, Arce-Jasso's counsel made clear that Arce-Jasso agreed with the stipulation "other than the legality of the stop which is the issue that we seek to preserve for appeal by doing this." The court found Arce-Jasso guilty and entered verdict on June 7, 2002.

Prior to sentencing, on January 3, 2003, Arce-Jasso filed a motion for reconsideration of the court's original denial of the motion to suppress based on *United States v. Portillo-Aguirre*, 311 F.3d 647 (5th Cir. 2002). After a hearing, the district court granted this motion by written order entered on May 9, 2003, and suppressed the drug evidence. The Government filed a motion for reconsideration of this decision; and after hearing additional testimony, the court entered another written order on August 12,

2003, reaffirming its decision to suppress the cocaine.  Arce-Jasso then filed a motion seeking either a judgment of acquittal or a new trial, which the court granted by entering a judgment for acquittal and also a conditional order for a new trial on August 29, 2003.

On September 25, 2003, the Government filed a joint notice of appeal per 18 U.S.C. § 3731 of:  (1) the court's judgment of acquittal and (2) the court's order denying the Government's motion for reconsideration of the court's prior order suppressing the cocaine evidence.

## DISCUSSION

**Whether this Court has appellate jurisdiction to review the denial of the Government's motion to reconsider the district court's suppression order.**

Before reaching the merits, this Court must examine the basis, if any, of its appellate jurisdiction.  *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 335 (5th Cir. 1999).  The Government's ability to appeal suppression of evidence in criminal cases is governed by 18 U.S.C. § 3731.  Section 3731 states:  "An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict."  18 U.S.C. § 3731 (2004).  The U.S. Attorney must also "certif[y] to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."  *Id.*  All appeals under §

4

3731 "shall be taken within thirty days after the decision, judgment or order has been rendered."  *Id.*  Federal Rule of Appellate Procedure 4(b)(1)(B)(i) requires:  "When the government is entitled to appeal, its notice of appeal must be filed in the district court within 30 days after . . . the entry of the judgment or order being appealed."[2]  FED. R. APP. P. 4(b)(1)(B)(i).

Arce-Jasso first contends that this Court does not have appellate jurisdiction to review the district court's decision to suppress the cocaine because the Government did not timely appeal that decision.  He argues the 30-day clock began to run on August 12, the day the court denied the Government's motion for reconsideration of the grant of suppression; therefore, the Government's filing notice of appeal on September 25 fell outside the 30 days.  The timing advanced by Arce-Jasso is correct.  The clock would not have started running on May 9, 2003, when the suppression was actually granted, but would have started when the court denied the motion for reconsideration the Government made, on August 12.  *See United States v. Greenwood*, 974 F.2d 1449, 1466-67 (5th Cir. 1992).

The Government concedes that if the clock started on August

---

[2]This Court has held that the 30 days start with the entry of the judgment or order in the docket per Rule 4(b), not the rendering of the judgment or order per § 3731.  *United States v. Wilson*, 306 F.3d 231, 237 (5th Cir. 2002).  Here, the dates of rendering and entry for reconsideration of the suppression are the same (August 12) and for the acquittal are one day apart (rendered on August 28, entered on August 29).

12, it did fail to meet the 30-day deadline. However, the Government points to the materiality requirement in § 3731 and argues that the outcome of the motion to suppress by itself did not have any legal effect on the prior guilty verdict and thus had no practical "material" effect on the proceedings until the district court granted Arce-Jasso's motion for judgment of acquittal. Thus, the Government contends the real clock began with the entry of acquittal, both for appealing the suppression and the acquittal. The Government is correct that appealing the decision to suppress per § 3731 would be possible here, notwithstanding the Rule 4(b) timing problem.[3]

Although Rule 4(b)'s timing requirement is considered jurisdictional, *see United States v. Wilson*, 306 F.3d 231, 236 (5th Cir. 2002), the Rule allows the district court to extend the time to file a notice of appeal for a period up to 30 days from the expiration of the Government's initial 30-day deadline. *See* FED. R. APP. P. 4(b)(4). However, the district court may only do so "upon a finding of excusable neglect or good cause." *Id.* This

---

[3] The Government has met § 3731's other requirements. Section 3731 expressly allows for Government appeal from orders suppressing evidence; here, the cocaine discovered in the Cougar was suppressed by the court. Suppression must not be made "after the defendant has been put in jeopardy and before the verdict"; this is also met here because the order was entered after the bench trial ended and the court entered its guilty verdict. *See United States v. Kington*, 801 F.2d 733, 735 (5th Cir. 1986) (explaining that § 3731 forbids the interruption of trial). The Government also made the proper certifications in its notice of appeal per § 3731.

Court has "customarily treated" the filing of an untimely notice of appeal within the 30-day additional period contemplated by Rule 4(b)(4) "as a motion for a determination whether excusable neglect or good cause entitles the defendant to an extension of time to appeal." *United States v. Alvarez*, 210 F.3d 309, 310 (5th Cir. 2000) (citation omitted). However, we have only granted this equitable treatment to criminal *defendants*, not to the Government as prosecutor. *See id.*; *United States v. Golding*, 739 F.2d 183, 184 (5th Cir. 1984); *United States v. Awalt*, 728 F.2d 704, 705 (5th Cir. 1984); *United States v. Shillingford*, 568 F.2d 1106, 1106 (5th Cir. 1978); *United States v. Gutierrez*, 556 F.2d 1217, 1218 (5th Cir. 1977).

Unlike Rule 4(b), § 3731's timing requirements are not jurisdictional; "we may still entertain § 3731 appeals certified in an untimely manner." *United States v. Smith*, 135 F.3d 963, 967 (5th Cir. 1998). In *Smith*, the Government filed notice to appeal an order quashing a subpoena within 30 days of that order's entry but did not certify its appeal until a few months later. *Id.* When the district court issued a second order confirming its decision to quash the subpoena, the Government reinstated its original appeal within 30 days of the second order's entry. *Id.* This Court viewed the Government's "reinstated appeal as incorporating the proper, but untimely, § 3731 certification from its first appeal." *Id.* at 968. We agreed to hear the Government's appeal, in spite of the

7

untimely certification, because the "[G]overnment effectively complied with the time limit in the statute" and "[t]o the extent the [G]overnment did not follow the precise letter of the law, the defendant, the person meant to be protected by § 3731, suffered no harm." *Id.*

We find the Government's untimeliness should not be excused here. This Court has never treated or recognized the Government's filing of an untimely motion within the 30-day additional period contemplated by Rule 4(b)(4) as a motion for a determination of excusable neglect or good cause. Whether this Court would do so is not before us because the Government advanced no such argument. However, even if we were to treat the Government's untimely appeal as a motion for a determination of excusable neglect or good cause, we find no excusable neglect or good cause for its tardiness here. Likewise, the Government's case here is easily distinguishable from *Smith* not only because there the Government timely appealed the district court's second quashing order (albeit with the certification flaw) within the 30 days as required by Rule 4(b)(1)(B)(i), but also because we find no "equities in this appeal [which] favor the [G]overnment." 135 F.3d at 968.

We now consider the Government's argument that a post-verdict suppression order fails to become material to the proceedings until the court decides to grant acquittal. We find this argument lacks merit. Rule 4(b)(1)(B)(i) requires filing of notice of appeal

8

"within 30 days after . . . the entry of the judgment or order being appealed." FED. R. APP. P. 4(b)(1)(B)(i). For appealing the denial of the motion for reconsideration of granting suppression entered on August 12, 2003, the deadline for the Government was September 11, 2003. The language of § 3731 does not extend or toll this deadline in any way, nor does it hinder the Government from appealing within 30 days; it also does not suggest that materiality is a different inquiry when a suppression is made pre- as opposed to post-verdict.

In **Smith**, this Court found an indicted suspect's allegedly false allegations in an arson case, captured on videotape by a TV station, to be "substantial proof of a fact material in the proceedings"; this Court allowed appeal of the quashed subpoena as suppressed evidence under § 3731. 135 F.3d at 967. Materiality did not depend on what legal decisions the district court hypothetically might later make in response to the quashing of the subpoena nor on any practical effect on the defendant's case. Neither party nor this Court knew precisely what evidence the videotape might yield, if any; in fact, there, the defendant Smith had joined the Government on the motion to subpoena the footage because he thought the evidence might be exculpatory to him. *Id.* This Court simply and briefly considered the materiality of the

9

contents of the footage at the time the quashing was final.[4]  There was no need to wait until such evidence practically affected the case.

Therefore, although the Government is correct that there are various hypothetical pathways the district court could choose to take after granting a post-guilty verdict suppression – immediately granting an acquittal, not changing the guilty verdict, or granting acquittal after some time has passed – if "the [suppressed] evidence is a substantial proof of a fact material in the proceeding," then the Government should note when 30 days will have passed after the suppression decision is final and make the decision to file notice of appeal within 30 days, instead of waiting until a possible acquittal is granted.

Moreover, while it may not always be readily apparent to the parties what evidence is a "substantial proof of a fact material in the proceeding," in Arce-Jasso's case the evidence considered by

---

[4]Although the Government makes the argument that the suppression decision did not ripen into a final decision under 28 U.S.C. § 1291 until the later judgment of acquittal and cites *United States v. Martinez*, 763 F.2d 1297, 1307-08 (11th Cir. 1985), for the idea that Government appeals must be appealable per both § 1291 and § 3731, this Circuit only requires meeting the requirements of § 3731.  *United States v. Smith*, 135 F.3d 963, 967 (5th Cir. 1998).  Nor does a suppression decision have to qualify as appealable as a collateral order.  Section 3731 is the proper vehicle for interlocutory criminal appeals by the Government, as even *Martinez* recognizes.  763 F.2d at 1308 n.10.  The suppression order was ripe for appeal when the district court denied the Government's motion for reconsideration on August 12.  *See United States v. Greenwood*, 974 F.2d 1449, 1466-67 (5th Cir. 1992).

the district court during the bench trial consisted only of the stipulation of fact.  This stipulation detailed the immigration stop and the cocaine discovered as a result of it, and Arce-Jasso's counsel clearly preserved the issue of the legality of the stop for appeal.[5]  A successful appeal on that issue would result in suppression of the cocaine.  Thus, the materiality of that very suppression by the district court to Arce-Jasso's ultimate criminal fate under § 841(a)(1) and 841(b)(1)(A) was entirely clear when the suppression was made and reconsideration denied, even if how the district court would later practically deal with that suppression was not.  The Government did not appeal in time; therefore, we lack jurisdiction to review the suppression decision.

**Whether this Court has appellate jurisdiction to review the judgment of acquittal.**

Arce-Jasso first argues that the Government cannot appeal the judgment of acquittal because appellate review would contravene the Double Jeopardy Clause.  This argument fails.  The Supreme Court has expressly stated:

> [T]he Government was entitled to appeal both the order granting the motion to suppress and the order setting aside the verdict of guilty, since further proceedings if the Government were successful on the appeal would not be

---

[5]For example, "even though appellants stipulated all the essential facts necessary for their conviction, they did not withdraw their pleas of not guilty, and sought to expressly reserve their right to appeal from the order denying the motion to suppress." *United States v. Mendoza*, 491 F.2d 534, 536 (5th Cir. 1974) (explaining that a stipulated bench trial is a proper means to preserve a pretrial suppression issue for appeal).

> barred by the Double Jeopardy Clause. The District Court had sensibly first made its finding on the factual question of guilt or innocence, and then ruled on the motion to suppress; a reversal of these rulings would require no further proceedings in the District Court, but merely a reinstatement of the finding of guilt. *United States v. Morrison*, 429 U.S. 1, 97 S. Ct. 24, 50 L. Ed. 2d 1 (1976); *United States v. Wilson*, 420 U.S. 332, 352-353, 95 S. Ct. 1013, 1026, 43 L. Ed. 2d 232 (1975).

*United States v. Ceccolini*, 435 U.S. 268, 270-71 (1978) (internal citation and footnote omitted) (finding so in context where bench trial resulted in guilty verdict).

Arce-Jasso also contends § 3731 does not permit appeals from judgments of acquittal. This argument also fails. Although § 3731 is silent on appeals from judgments of acquittal, this Circuit allows Government appeals per § 3731 from post-verdict judgments of acquittal. *United States v. Martiarena*, 955 F.2d 363, 366 (5th Cir. 1992); *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir. 1980).

However, Arce-Jasso correctly argues that the law of the case doctrine precludes the Government from presenting an adequate case or controversy under Article III.[6] The law of the case doctrine is "a restriction self-imposed by the courts on themselves in the interests of judicial efficiency, [which] generally operates to preclude a reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself upon a

---

[6]The Government responds by merely restating its argument that the suppression order itself is appealable.

12

subsequent appeal." *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1169 (5th Cir. 1981); *see also Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir. 1989) ("Later courts may not consider matters which were decided by necessary implication as well as those decided explicitly.") (internal quotation marks omitted).

Thus, because this Court cannot disturb the improperly appealed suppression ruling, it becomes the law of the case by "necessary implication" and cannot be reconsidered by the district court. There is no other ground argued or available to remand the case. And even if this Court could do so, on remand the Government would face a Hobson's choice[7]: dismiss the charges against Arce-Jasso due to lack of evidence or retry him without the cocaine.[8] This Court has recognized that "[a] claim becomes moot when . . . the parties lack a legally cognizable interest in the outcome." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003) (alteration in original) (quoting *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)).

---

[7]A Hobson's choice is defined as "an apparently free choice when there is no real alternative." Merriam Webster Online Dictionary (2004), *at* http://www.m-w.com.

[8]These are the Government's only options. All but one of the facts Arce-Jasso stipulated to concerned the checkpoint stop found illegal by the district court or the cocaine found as a result of the stop, which was suppressed by the district court. Thus, little, and arguably no, factual evidence remains that could be used to convict Arce-Jasso under 21 U.S.C. § 841(a)(1) and (b)(1)(A) on retrial.

13

Neither of the Government's options provides an effective remedy on remand, so the Government does not have any "interest in the outcome for which effective relief is available." *Karaha Bodas*, 335 F.3d at 365. The Government's appeal does not present an adequate case or controversy. Therefore, this appeal of Arce-Jasso's judgment of acquittal is moot.

## CONCLUSION

Having carefully considered the parties' respective briefing and arguments, for the reasons set forth above, we DISMISS the Government's appeal.

**DISMISSED.**

14