**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 99-4462

DENNIS BLANE GWINN,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Robert C. Chambers, District Judge.
(CR-98-164-5)

Argued: April 7, 2000

Decided: July 13, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkinson and Senior Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston,
West Virginia, for Appellant. Miller Allison Bushong, III, Assistant
United States Attorney, Charleston, West Virginia, for Appellee. **ON
BRIEF:** Mary Lou Newberger, Assistant Federal Public Defender,
Michael W. Strong, Assistant Federal Public Defender, Charleston,
West Virginia, for Appellant. Rebecca A. Betts, United States Attor-
ney, Charleston, West Virginia, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

In this case, we must decide whether Dennis Gwinn's partially clothed condition when arrested -- without shoes and shirt -- presented an exigency that justified police officers' reentry into Gwinn's trailer without a warrant to retrieve his boots and a shirt. The officers had just completed a lawful entry and protective sweep of the trailer and were preparing to transport Gwinn to the regional jail.

The district court denied Gwinn's motion made under the Fourth Amendment to suppress a gun found in his boots, applying a general standard of reasonableness. While we affirm the district court's ruling, we reject its rationale and affirm on the basis that Gwinn's partially clothed condition in the particular circumstances of this case presented the police officers with an exigency justifying their reentry into the trailer and their temporary seizure of Gwinn's boots without a warrant.

I

West Virginia State Police in Rainelle, West Virginia, responded to a 911 dispatch during the early evening hours of May 10, 1998, which indicated that "a domestic altercation[was] in progress on Backus Mountain Road [in Meadow Bridge, West Virginia] with weapons involved." The 911 dispatcher had received a call from Anna Terry who stated:

> [M]y daughter is living up there with a guy named Dennis Gwinn, and she just called me real fast and told me to call the police. . . . And she told me that he's got a gun in there by the door and he told her he was going to kill her.

Terry also told the 911 dispatcher that her daughter had her baby with her.

State Trooper Ron Thomas was dispatched to respond to the call and was later joined by State Police Sergeant Scott Moore and

2

another trooper. When Trooper Thomas arrived at 485 Backus Road, a remote location in Fayette County, he pulled his cruiser to within 25 yards of a small, "single-wide" trailer with a front porch. He drew his weapon from its holster and yelled for Dennis Gwinn to come out. Gwinn exited the trailer, wearing only a pair of blue jeans. Trooper Thomas conducted a pat-down search of Gwinn, handcuffed him, and placed him in the back seat of his cruiser. Trooper Thomas then asked Gwinn "where his wife was at so [Thomas] could speak to her." Gwinn responded that the woman was his girlfriend, not his wife, and that she was inside the trailer.

Trooper Thomas then entered the trailer -- the door was open and the screen door shut -- where he found Diane Harrah, crying and holding her baby. Sergeant Moore, who had just joined Trooper Thomas, conducted a protective sweep of the trailer while Thomas questioned Harrah. Harrah reported that Gwinn was drunk and had prevented her from leaving the trailer. She related that Gwinn had gone to the bedroom, obtained a pistol, and brandished it, telling her that "if you try to leave, I'll kill you." She described the handgun as a blue-colored pistol but did not know where Gwinn had put it. She had last seen him with it in the living room. Trooper Thomas and Sergeant Moore searched for the handgun, but discovered instead a loaded shotgun under the couch. They failed to find the handgun.

The officers left the trailer, placed the shotgun in the trunk of Trooper Thomas' cruiser, and prepared to transport Gwinn to the "regional jail." Because Gwinn was wearing no shirt or shoes, Trooper Thomas went back into the trailer and said to Harrah, "Where's his shoes? And we need to get a shirt for him." Harrah directed Thomas to Gwinn's boots in the living room, and she then went back to the bedroom to retrieve a shirt. While Harrah was getting the shirt, Trooper Thomas picked up Gwinn's mid-calf work boots, which "seemed awful[ly] heavy," and heard something "flop inside." When he opened the boot and looked inside, he discovered a pistol. He showed it to Harrah, and Harrah identified it as the weapon with which Gwinn had threatened her earlier that evening.

Gwinn was charged as a felon in possession of a Smith & Wesson .38 caliber revolver and a Winchester 12-gauge shotgun, in violation of 18 U.S.C. § 922. Gwinn moved to suppress the evidence of the two

3

guns because they were obtained pursuant to a warrantless search. The district court granted the motion with respect to the shotgun and denied the motion with respect to the handgun. In denying Gwinn's motion to suppress the .38 caliber handgun, the court concluded that "the second search and seizure indeed were proper based on the plain view doctrine." The court, relying on United States v. Jackson, 131 F.3d 1105 (4th Cir. 1997), found that Trooper Thomas was lawfully in a place from which the handgun could be plainly viewed; that he had a lawful right of access to the handgun; and that its incriminating character was immediately apparent. The court found Trooper Thomas' return to the trailer to be justified on a standard of "reasonableness," balancing his justification for entering Gwinn's trailer against Gwinn's privacy interest. The court stated:

> The Court finds two factors critical in concluding that Trooper Thomas acted reasonably in invading Mr. Gwinn's privacy interest in his home. First, Trooper Thomas had lawfully entered Mr. Gwinn's home earlier. As a result, Mr. Gwinn had a reduced expectation of privacy in the areas of his home where Officer Thomas lawfully had been. Second, Officer Thomas' reentry was carefully circumscribed to minimize the intrusion. Officer Thomas asked Ms. Harrah to obtain a shirt for Mr. Gwinn, and he did not travel beyond the entryway to obtain shoes for Mr. Gwinn. Arguably, Officer Thomas could have asked Ms. Harrah to get shoes for Mr. Gwinn, as well, but the Court is not prepared to say that his decision to select the shoes and pick them up himself was unreasonable.

Gwinn pled guilty to the single-count indictment, reserving his right to appeal the district court's ruling on his motion to suppress under Federal Rule of Criminal Procedure 11(a)(2). The district court sentenced Gwinn to 37 months imprisonment. Gwinn filed this appeal, contending that Trooper Thomas' seizure of the .38 caliber handgun violated his Fourth Amendment right to be free from unreasonable searches and seizures.

II

Gwinn contends that the district court erred in two respects in denying his motion to suppress the evidence of the .38 caliber hand-

4

gun: (1) the district court applied an incorrect legal standard to justify Trooper Thomas' reentry into Gwinn's trailer to retrieve his boots and shirt, and the reentry was not justified by any recognized exception to the warrant requirement; and (2) the plain view doctrine cannot justify Trooper Thomas' seizure of the handgun because its incriminating character was not "immediately apparent," since "only after the trooper opened the boot and visually examined its contents did it become apparent that a revolver was present therein." At oral argument, Gwinn's able counsel clarified and refined Gwinn's position with respect to the seizure, arguing that Trooper Thomas' seizure of the boots containing the handgun was illegal; he conceded that if the boots were properly seized, the trooper was entitled to assure that they did not contain weapons or contraband before giving them to Gwinn while he was in lawful custody.

The government maintains that Trooper Thomas' reentry into the trailer was justified by the exigent circumstances created by a need "to protect defendant by providing appropriate basic clothing" and that Trooper Thomas' reentry and seizure of the boots was justified by the apparent consent of Diane Harrah, who originally called for police help and who directed Trooper Thomas to the boots.

We review the district court's findings of historical facts for clear error. See Ornelas v. United States, 517 U.S. 690, 699 (1996). But we review the determination of whether the historical facts satisfy a constitutional standard de novo. See id. at 696-99. De novo review is preferred for determinations of whether a search or seizure violates the Fourth Amendment in order to minimize the variations of conclusions drawn by different trial judges applying facts to law, because "[s]uch varied results would be inconsistent with the idea of a unitary system of law." Id. at 697. In this case, the parties do not challenge the district court's findings of historical facts. Accordingly, on the issue of whether Trooper Thomas' reentry into the trailer and his seizure of the boots and handgun violate the Fourth Amendment, we review the district court's ruling de novo.

We begin by noting that Trooper Thomas and Sergeant Moore's initial entry into the trailer following Gwinn's arrest and their protective sweep of the trailer comported with established principles of Fourth Amendment jurisprudence. See Maryland v. Buie, 494 U.S.

5

325, 334-36 (1990); Mincey v. Arizona, 437 U.S. 385, 392 (1978). The immediate safety of Diane Harrah and her baby had become legitimate concerns because of the initial information received by the State Police about Gwinn. Based on the 911 dispatch, Gwinn was reported to be drunk, brandishing a gun, and threatening to kill Harrah. The dispatch advised the troopers, "We've had problems with this guy before," and Trooper Thomas knew that Gwinn had previously been arrested for a felony. On appeal, Gwinn does not challenge the troopers' initial entry into the trailer. While Gwinn did challenge the subsequent investigatory search that produced the shotgun, the district court granted his motion to suppress the evidence of the shotgun, and accordingly that issue is not before us. Gwinn maintains, rather, that after the troopers completed the investigatory search and left the trailer in preparation for transporting him to jail, their immediate safety concerns should have been allayed and therefore they were not entitled to reenter the trailer to retrieve Gwinn's clothes without either his permission or a warrant. He contends that the record evidence is insufficient to support a conclusion that the retrieval of his clothes was necessary. All that is revealed is that the date was May 10, the time was sometime shortly after 8:30 p.m., and the weather was cloudy.

There is no claim by Gwinn, nor is there any suggestion from the record, that Trooper Thomas' reentry into the trailer was a pretext or was for any purpose other than securing clothing for Gwinn. This purpose is borne out by the fact that Trooper Thomas did not proceed past the living-room area, where he announced to Harrah the need to retrieve Gwinn's shoes and a shirt. And when Harrah directed Trooper Thomas to Gwinn's boots in the corner, Thomas immediately proceeded to their location and picked them up. It was only after Trooper Thomas picked up the boots that he discovered the pistol, which, after confirming that it was the one brandished by Gwinn, he seized.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It has been construed to mean that "[a]bsent exigent circumstances, [the] threshold [of one's house] may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). The protection

6

afforded by the Fourth Amendment allows the people to rest in comfort knowing that they can "retreat into [their] own home[s] and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). While a warrant is generally required to conduct a search of a person's home, a warrantless search may be conducted when the "`exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey, 437 U.S. at 393-94; see also id. at 392 (noting that "[t]he need to protect or preserve life or avoid serious injury" may justify a warrantless search of a house). But any warrantless search must be "strictly circumscribed" by the exigency that justifies the exception to the warrant requirement. See id. at 393. In accordance with these principles, the Supreme Court has held it reasonable for an officer to enter a dormitory room without a warrant to accompany a student in his custody who went to the room for the purpose of obtaining identification. See Washington v. Chrisman, 455 U.S. 1 (1982).

In applying these principles, therefore, we must determine whether Trooper Thomas' reentry into Gwinn's trailer to retrieve shoes and a shirt for Gwinn falls within an exception to the Fourth Amendment's warrant requirement.

First, the district court appropriately concluded that Trooper Thomas' reentry into Gwinn's trailer was not justified by consent. Gwinn did not request that Trooper Thomas retrieve his clothes, and Thomas did not ask Harrah, who was in the trailer, for permission to reenter. But the court also concluded that exigent circumstances to justify Gwinn's reentry did not exist. The court explained that Gwinn was "wearing enough clothing to satisfy standards of public decency, and the defendant was arrested on May 10, 1998, when it certainly is possible to go outside without a shirt or shoes." After rejecting the generally accepted exceptions to the warrant requirement, the court upheld the warrantless entry, applying a general reasonableness standard and concluding that Trooper Thomas' "justification for entering Mr. Gwinn's home" outweighed "Mr. Gwinn's privacy interests."

We agree with Gwinn's assertion that the district court erred by applying a general reasonableness test to justify a warrantless search of a home. While the Fourth Amendment proscribes only "unreason-

7

able searches and seizures," the search of a home "without a warrant is per se unreasonable, unless the police can show . . . the presence of `exigent circumstances.'" Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971) (citations omitted). The core protection of the Fourth Amendment would be eroded if, in order to enter a home, an officer were required only to have a reasonable law-enforcement purpose that a court could later find outweighed a person's privacy interest. Nevertheless, for different reasons, we agree with the district court's conclusion that Trooper Thomas' warrantless reentry was justified in the particular circumstances of this case. We rely on the exigencies created by the substantial risk of injury to Gwinn were he to be transported and processed following arrest without shoes and a shirt and the limited degree of intrusion represented by the reentry and seizure of the boots.

Gwinn was arrested in a remote area in Fayette County, West Virginia, during the evening hours in early May. At the time of his arrest, he was wearing only blue jeans. The interest served by requiring him to put on shoes and a shirt was more than "the desire of law enforcement officers to complete the arrestee's wardrobe." United States v. Butler, 980 F.2d 619, 621-22 (10th Cir. 1992) (characterizing that court's earlier holding in United States v. Anthon, 648 F.2d 669 (10th Cir. 1981), which held that a warrantless entry of a hotel room, while allowing the occupant who had been arrested in the hallway, to change out of his swimming suit, violated the arrestee's Fourth Amendment rights). It was the troopers' duty to look after the reasonable safety requirements of persons in their custody. See United States v. Di Stefano, 555 F.2d 1094, 1101 (2d Cir. 1977) (holding that officers have a duty to find clothing for arrestee or permit arrestee to do so). Wherever Gwinn might walk while in these troopers' custody, he would face the substantial hazards of sustaining cuts or other injuries to his feet, as well as the increasing chill during the evening hours of an early May day. We do not believe that the government is required to present specific evidence of every nail, piece of glass, stone or other hazard or to present specific weather forecasts to justify its concern for Gwinn's safety and well-being.

We join the Second and Tenth Circuits in concluding that under circumstances similar to those in this case, an officer is authorized to take reasonable steps to address the safety of the arrestee and that the

8

arrestee's partially clothed status may constitute an exigency justifying the officer's temporary reentry into the arrestee's home to retrieve clothes reasonably calculated to lessen the risk of injury to the defendant. In Di Stefano, the Second Circuit concluded that police officers had "a duty to find clothing for [an arrestee in their custody] to wear or to permit [the arrestee] to do so." 555 F.2d at 1101. And when, in fulfilling that duty, officers discovered incriminating evidence in plain view, they were entitled to use that evidence against the defendant. Similarly, in United States v. Titus, 445 F.2d 577 (2d Cir. 1971), the court refused to suppress evidence that was found in plain view while officers were searching for clothing for a defendant who was nude when they arrested him. The court observed that the search for clothing was proper because the agents "were bound to find some clothing for Titus rather than take him nude to FBI headquarters on a December night." Id. at 579.

In circumstances very similar to those presented here, the Tenth Circuit in Butler held that police officers' entry into a trailer to retrieve shoes for the defendant fit the exigency exception for a warrantless search. Because the officers there noticed broken glass on the ground in the area where the arrest had been made, requiring Butler to walk in his bare feet "would have posed a serious risk to his health." Butler, 980 F.2d at 622; see also State v. Griffin, 336 N.W.2d 519, 524 & n.2 (Minn. 1983) (authorizing warrantless entry into home to retrieve shoes and coat for barefoot arrestee where there was snow on the ground).

In applying a clothing exigency exception to the warrant requirement in this case, we rely on numerous factors that were present. First, Trooper Thomas was presented with an objective need to protect Gwinn against the substantial risk of injury to his feet and of chill in the absence of a shirt. Second, there was no evidence or even a claim that Trooper Thomas' reasons for reentering the trailer were pretextual. Third, the intrusion into Gwinn's trailer was slight and temporary, particularly in light of the fact that the officers had only moments before lawfully been in the trailer to ensure the safety of Harrah and her baby and had neither completed their business at the site nor left it. Fourth, the intrusion was strictly limited to the purpose of retrieving shoes and clothing. Fifth, the purpose of the reentry and seizure of the boots was not to serve a governmental interest, but to

9

ensure Gwinn's reasonable safety while he was in the government's custody. Indeed, for that reason it is doubtful whether Trooper Thomas' actions in retrieving the boots to hand them to Gwinn would have constituted a "meaningful interference" with Gwinn's possessory interests in the boots so as to even constitute a seizure. United States v. Jacobsen, 466 U.S. 109, 113 (1984) ("A `seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property").

In applying the "clothing exception" to this case, we derive some support from the Supreme Court's holding in Cady v. Dombrowski, 413 U.S. 433 (1973). In Cady, an off-duty police officer was arrested for drunken driving following a one-car accident, and the arresting officers arranged to have the damaged vehicle towed to a private garage. Over two-and-one-half hours later, the arresting officers returned to the wrecked vehicle to find and retrieve the off-duty police officer's service revolver. During their effort to find the revolver, the arresting officers found evidence that linked the off-duty officer to a murder. In upholding the warrantless search of the vehicle, the Supreme Court held that the search was not unreasonable because (1) the police had "exercised a form of custody or control" over the damaged automobile because they had made arrangements for its removal to the garage, and (2) retrieval of the revolver was "`standard procedure' . . . to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." Id. at 443.

In the case before us, Trooper Thomas had legally entered Gwinn's trailer and was in the process of completing his tasks incident to Gwinn's arrest before leaving the site. He thus had legally exercised custody and control over the trailer, and his temporary departure from the trailer to place the discovered shotgun in the trunk surely left him with "a form of custody or control" of the trailer, not unlike that described in Cady. 413 U.S. at 443. Moreover, as in Cady, Trooper Thomas did not reenter the trailer to search for or to seize any item for law-enforcement purposes. He reentered to protect Gwinn from potential hazards, not unlike the motive in Cady where the officers returned to and searched the damaged vehicle for public safety reasons. See id. at 447.

10

While we recognize this case presents circumstances distinct from Cady, Cady's "community caretaking" rationale nevertheless provides some support for the clothing exception that we apply. 413 U.S. at 441. The justification for the warrantless search of the disabled vehicle was found "constitutionally reasonable" because of the arresting officer's "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." Id. at 447.

Although it is difficult to suppose that the circumstances of this case would require Trooper Thomas to seek out a magistrate to obtain a warrant authorizing his temporary reentry into the trailer to retrieve Gwinn's clothes, we nevertheless caution against using a clothing exception as a cover for entries made for other purposes. We must reiterate that an essential premise for our application of the exception here is the fact that nothing in the record suggests that Trooper Thomas' reason for the reentry was pretextual or that he acted in bad faith. We also note that, in invoking the clothing exception to the warrant requirement, the government bears the burden of demonstrating particularly that the arrestee had a substantial need for the clothing and that the government's response was limited strictly to meeting that need. Cf. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984) ("[T]he burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries"); Vale v. Louisiana, 399 U.S. 30, 34 (1970)(same).

Having found that, in the exigent circumstances presented by this case, Trooper Thomas was justified in reentering Gwinn's trailer and retrieving his boots without a warrant, it follows that the search of the boots themselves did not violate the Fourth Amendment. Police officers are clearly justified in searching any item before they give it to a person in their custody to protect their safety and deny the person contraband. See United States v. Ricks, 817 F.2d 692, 696 (11th Cir. 1987) (holding that a jacket, which defendant requested, was "subject to a legitimate search" before being handed to the defendant); cf. Chimel v. California, 395 U.S. 752, 763 (1969) (search incident to arrest may extend to the arrestee's person and his grab area, i.e., "the area from within which he might gain possession of a weapon or destructible evidence"); United States v. Han, 74 F.3d 537, 541-43 (4th Cir.

11

1996) (holding search of bag near suspect's feet legitimate because it was in defendant's grab area). At oral argument, Gwinn's counsel did not quarrel with this proposition.

For the foregoing reasons, we affirm the district court's ruling that denied Gwinn's motion to suppress the evidence of the .38 caliber Smith & Wesson pistol that formed the basis for his conviction.

<u>AFFIRMED</u>

12