**UNITED STATES of America,**
**Plaintiff,**

v.

**Walter JACKSON, Defendant.**

**Criminal Action No. 05–477(FLW).**

United States District Court,
D. New Jersey.

Feb. 10, 2006.

---

Christopher J. Christie, United States Attorney by Robert Stephen Stigall, Assistant United States Attorney, U.S. Attorney's Office, Cranford, NJ, for the United States of America.

Richard Coughlin, Federal Public Defender by Lori M. Koch, Assistant Federal Public Defender, Federal Public Defender's Office, Camden, NJ, for Defendant Walter Jackson.

## OPINION

WOLFSON, District Judge.

Presently before the Court is Defendant Walter Jackson's Motion to Suppress a handgun and ammunition seized by an officer of the Glassboro Police Department after the officer's execution of a warrant for Defendant's arrest on criminal drug conspiracy charges. Defendant argues that the officer's seizure of the gun and ammunition violated the Fourth Amendment because the officer entered his apartment without a valid search warrant. The Government asserts that the officer's entry into Defendant's apartment was justified under a variant of the "exigent circum-

stances" exception to the warrant requirement known as the "clothing exception." Consequently, the Government asserts that because the officer was lawfully present in Defendant's apartment, his seizure of the disputed evidence, which he discovered while retrieving shoes from Defendant's bedroom at Defendant's request, is justified under the plain view doctrine.

The so-called clothing exception has been used to justify a law enforcement officer's warrantless entry into a partially clothed arrestee's home and subsequent seizure of incriminating evidence therein, when the warrantless entry is for the limited purpose of retrieving clothing or shoes for that arrestee. Several of the Circuit Courts of Appeals have recognized the clothing exception to the warrant requirement. The Third Circuit has not addressed the issue. Absent Third Circuit precedent, and because the particular facts of this case distinguish it from cases in which other courts have applied the clothing exception, I decline to apply the novel exception here. However, I find that application of the clothing exception is unnecessary in this case because the officer was lawfully present in Defendant's bedroom when he discovered the gun and ammunition. Consequently, the officer's seizure of the evidence is fully justified under the plain view doctrine. Accordingly, and for the reasons that follow, Defendant's Motion to Suppress is denied.

## I. BACKGROUND

On June 1, 2005, a special agent of the United States Drug Enforcement Administration ("DEA") swore a criminal complaint against Defendant and Archie Diggs which alleged that the two had engaged in a conspiracy to distribute and possess with the intent to distribute crack cocaine. On June 2, 2005, Glassboro Police Officer Michael Powell and other law enforcement agents executed a warrant for Defendant's arrest at a Glassboro apartment complex. Defendant was ordered detained following his initial appearance on June 3, 2005. On June 15, 2005, a federal grand jury returned a three-count Indictment charging Defendant and Diggs with conspiracy to distribute and possess with the intent to distribute, fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846; and possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).[1] On July 25, 2005, Defendant was arraigned and entered a plea of not guilty. Defendant now moves to suppress a .380 caliber handgun and bag containing approximately twenty-two rounds of ammunition discovered by Powell at the scene of Defendant's arrest.

Defendant's Motion relies on both a factual and legal challenge to the legitimacy of Powell's seizure of the gun and ammunition. The factual dispute is easily resolved. After taking Defendant into custody on June 2, 2005, Powell recorded his recollection of the arrest in a written report of the same date, which the Government later marked as Government's Exhibit MP–1 ("Ex.MP–1"). On October 7, 2005, I held an evidentiary hearing in conjunction with this Motion, during which I heard testimony from Powell and Defendant. *See* Transcript of Pre–Trial Motions, October 7, 2005 ("Tr."). On the same day, Defendant submitted an affidavit disputing certain facts contained in Powell's police report.[2] The following

---

1. The remaining count charges only Diggs with possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

2. Defendant repeated the allegations in his affidavit during his testimony at the evidentiary hearing. As discussed below, I found Defendant's testimony incredible. Consequently, I also reject the allegations contained in his affidavit.

findings of fact are drawn from Powell's written report as well as the testimony given by Powell and Defendant.

On June 2, 2005, Powell joined two other members of the Glassboro Police Department and an investigator from a local prosecutor's office at the Parkcrest Village Apartments in Glassboro to execute a warrant for Defendant's arrest. Tr. 35–36. At 3:55 p.m., Powell knocked on the door of apartment P–311, which he knew to be leased to Defendant.[3] Ex. MP–1. Approximately two minutes passed before Defendant answered the door, during which Powell heard "a lot of movement and shuffling around" in the apartment. *Id.* When Defendant opened the door, Powell advised him of the arrest warrant, verbally advised Defendant of his *Miranda*[4] warnings, and asked Defendant if anyone else was inside the apartment. *Id.* According to Powell, Defendant answered: "No. Let me show you," and turned to move up the stairway toward the second-floor area of the apartment.[5] *Id.* Powell stopped Defendant from walking back up the stairway and handcuffed him. *Id.*

At this point, Defendant's account of the arrest diverges from Powell's written report and testimony. Powell claims that Defendant, while otherwise fully clothed, was shoeless, and that Defendant asked to re-enter the apartment to retrieve shoes before being transported to police headquarters. Defendant claims that he was indeed wearing shoes and made no such request to re-enter the apartment. At the October 7, 2005 evidentiary hearing, I heard testimony from Defendant and Powell on the question of whether Defendant

was wearing shoes when he answered Powell's knock.

Defendant was evasive and inconsistent, and refused to answer certain questions posed by the Government. For example, during cross-examination, the Assistant United States Attorney asked Defendant for the identities of individuals Defendant testified he allowed to stay in his apartment from time to time. Tr. 66. Defendant refused to answer, and instead replied: "What do it have to do with me being arrested? I would like to know." *Id.* After I directed Defendant to answer the question, Defendant replied: "Friends. That's all. Just friends. I don't recall the names right now." *Id.* The Assistant United States Attorney clarified: "You can't tell the Court a single name of anybody who stayed at your apartment?" *Id.* To which Defendant answered: "Right now, no, I cannot. . . ." *Id.* I found Defendant's testimony incredible. Specifically, I stated: "It was clear to me, when [Defendant] was talking about this apartment being used by other people, and he couldn't remember anyone who was there, it's just not believable, and this was only three months ago." Tr. 81–82. I also discussed certain other factual inconsistencies in Defendant's testimony and concluded: "[Defendant's] testimony cannot be found to be credible in light of all that and the manner in which [Defendant] responded on the stand." Tr. 82.

By contrast, Powell was forthcoming, consistent and very credible. Accordingly, I accepted Powell's account of the arrest without reservation and concluded that Defendant was not wearing shoes when he

---

**3.** Powell had earlier obtained a copy of the lease agreement for P–311 Parkcrest Village Apartments, which listed Defendant and another person as tenants. Tr. 22–23, 25.

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Powell testified that Defendant's one-bedroom apartment is a single-story, second floor apartment accessible from ground level by a stairway with solid walls on either side. Tr. 27, 40.

answered Powell's knock at his apartment door. Tr. 49, 82. Specifically, I stated: "Not only did Officer Powell answer the questions clearly, ... he did not overreach in the answers that he gave[;] when he could not give an answer that might have been helpful ... to the [G]overnment[,] he was careful not to [elaborate] if he could not actually recall." Tr. 81. Further, I accepted Powell's recollection—which he recorded in his contemporaneous report on the day he arrested Defendant, and about which he later testified—that Defendant requested to re-enter the apartment to retrieve footwear before being transported to police headquarters. Ex. MP–1; Tr. 28, 40, 50–51, 52, 82. I adopt and incorporate into this Opinion the findings of fact I placed on the record at that hearing.

After Powell handcuffed Defendant, the remaining three officers moved past them, into and up the stairway to secure the apartment.[6] Tr. 28–29. After approximately one minute, Powell accompanied Defendant up the stairway, where they joined the other officers. Tr. 41. Once upstairs, Powell secured Defendant in the apartment's kitchen, and, according to Powell, Defendant asked the officers to get his shoes from his bedroom. Tr. 29, 52. Powell asked Defendant what particular pair of shoes he wanted, and where in the bedroom they were located. Tr. 50, 52. Powell testified that he could not remember his exact exchange with Defendant regarding the location of the shoes. However, Powell explained: "[Defendant] asked that we get him his shoes. I'm almost positive he told me exactly which

ones he wanted. Because I said: 'Which ones do you want?' And I went into the room and got the shoes for him." Tr. 52. Defendant did not accompany Powell into the bedroom, but rather, remained in the kitchen supervised by the other officers.[7] Tr. 40–41.

Powell described Defendant's bedroom as about ten feet wide and ten feet long. Tr. 29. He testified that Defendant's shoes were on the floor between the bed and an open closet, and that as he walked into the room toward the shoes, he observed in plain view "what appeared to be the handle of a handgun" protruding from between the two mattresses of the bed. Tr. 29, 43; Ex. MP–1. As Powell bent over to pick up Defendant's shoes, he took a closer look at the object and determined that it was in fact a handgun. *Id.* Powell lifted the mattress to seize the gun and noticed a plastic bag filled with ammunition. Tr. 29–30. He seized the gun and ammunition, and, with help from another officer, secured them in evidence bags. Tr. 43–44. The black .380 caliber, semi-automatic handgun was fully loaded when Powell seized it, and someone had filed off its serial numbers. Ex. MP–1. The bag of ammunition contained twenty-two .380 caliber rounds. *Id.* Finally, Powell testified that were it not for Defendant's request to retrieve shoes before being transported to police headquarters, he "probably" would not have taken Defendant back upstairs into the apartment. Tr. 52.

After placing my factual findings on the record, I directed the parties to provide

---

**6.** Powell testified that the three officers went upstairs to perform a protective sweep of Plaintiff's apartment "to make sure there was no one there ready to ambush [them]." Tr. 28–29, 39–40. Powell explained that the protective sweep was necessary because he had heard noises in the apartment after he knocked on the door and before Defendant answered, which sounded like people moving

around, and because other officers performing surveillance of Defendant's apartment throughout the day had reported that numerous people had been in and out. Tr. 26.

**7.** Powell could not recall whether one of the other three officers followed him into Defendant's bedroom. Tr. 41.

additional briefing on the question of Powell's entry into Defendant's bedroom. Tr. 82. Specifically, I asked the parties to research whether the law recognized any meaningful difference between Powell's solo entry into Defendant's bedroom to retrieve Defendant's shoes, and a situation in which Powell had merely accompanied Defendant into the bedroom to retrieve the shoes. Tr. 82. The parties promptly filed thorough briefs on the issue, and after carefully reviewing them, I now decide the question.

## II. DISCUSSION

■ The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures. U.S. Const. amend. IV. Among those places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection. *See Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). "With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586, 100 S.Ct. 1371; *see also United States v. Coles*, 437 F.3d 361, 365, 2006 WL 302243, *4 (3d Cir. 2006).

■ By its terms, however, the Fourth Amendment's protection against warrantless searches and seizures is not absolute. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Courts recognize that there are situations in which the public interest requires some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search. *See e.g., United States v. Martinez–Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Courts allow departure from that general rule in only a few, exceptional circumstances.[8] For example, when executing an arrest warrant in a person's home, the police may, in certain instances, conduct a limited, protective search or sweep of the premises. *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The police may also depart from the warrant requirement and enter a private dwelling to respond to a dangerous or emergency situation, "when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *see also United States v. Velasquez*, 626 F.2d 314, 317 (3d Cir.1980). If the police see contraband in plain view while inside a home executing an arrest warrant, or responding to a legitimate emergency, they may seize it as evidence of a crime. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Menon*, 24 F.3d 550, 559 (3d Cir.1994).

■ In all cases, when the government searches a citizen's home without a warrant, it bears the burden of showing that the search fell within one of the exceptions to the warrant requirement. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). If the scope of a search "exceeds that permitted by the

8. *See generally* Jeffrey Hannigan Kuras, Catherine Kriendler Levy, Jennifer L. Burns & Scott A. Lowry, Warrantless Searches and Seizures, 90 *Geo. L.J.* 1130, 1145 (2002) (collecting and analyzing recent federal case law dealing with permissible departures from the warrant requirement).

terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). However, "[a]s in other Fourth Amendment contexts . . . the 'reasonableness' inquiry . . . is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ Here, the Government argues that Powell's seizure of the gun and ammunition is justified under the plain view doctrine. The plain view doctrine allows police officers to lawfully seize incriminating evidence without a warrant when: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *Horton,* 496 U.S. at 136, 110 S.Ct. 2301, *Menon,* 24 F.3d at 559. Defendant argues that the Government cannot satisfy the first prong of the plain view test because Powell and his fellow officers violated the Fourth Amendment by entering his apartment and bedroom without a warrant or other lawful justification. Specifically, Defendant asserts that the officers had no basis to conclude that a protective sweep of his apartment was necessary, and that Powell's warrantless entry into his bedroom was similarly unjustified.

■ The Government argues that Powell and his fellow officers' warrantless entry into Defendant's apartment and bedroom was permissible under the Fourth Amendment and satisfies the first prong of the plain view test. First, the Government argues that the officers properly entered Jackson's residence because they had a warrant for his arrest. In *Payton,* the United States Supreme Court concluded that an arrest warrant authorizes law enforcement to enter a defendant's dwelling to arrest him. 445 U.S. at 602–03, 100 S.Ct. 1371. The Court explained:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

*Id.* While the Court's holding in *Payton* authorized the police to cross the threshold of Defendant's apartment, it alone does not provide sufficient justification for their subsequent protective sweep of the premises, or Powell's entry onto Defendant's bedroom. However, other Supreme Court precedent provides such justification.

■ In *Maryland v. Buie,* the Supreme Court held that incident to an arrest, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could immediately be launched." 494 U.S. at 334, 110 S.Ct. 1093. Such a limited protective sweep may be conducted "as a precautionary matter and without probable cause or reasonable suspicion." *Id.* If the officers wish to undertake a more wide-ranging sweep, however, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* "[G]eneralizations,

without more, are insufficient to justify a protective sweep." *United States v. Moran Vargas*, 376 F.3d 112, 116 (2d Cir.2004). So too is a lack of information. *Id.* at 117. Moreover, "[t]he justification for a protective sweep is ephemeral: it may last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Moran Vargas*, 376 F.3d at 115 (citation omitted). Even when "justified by the circumstances," a protective sweep is "aimed at protecting the arresting officers," *Buie*, 494 U.S. at 335, 110 S.Ct. 1093, not gathering evidence. It is therefore "not a full search of the premises, [and] may extend only to a cursory inspection of those spaces where a person may be found." *Id.*

■■■ In this case, the officers' warrantless entry into Defendant's apartment to conduct a protective sweep was justified by their reasonable suspicion that others may have been present there, and in a position to pose a legitimate threat to the officers' safety. The officers were at Defendant's apartment to execute an arrest warrant issued on the basis of a criminal complaint charging Defendant with conspiracy to distribute and possess with the intent to distribute crack cocaine. Powell testified that before the arrest was initiated, other officers performing surveillance of Defendant's apartment informed him that numerous individuals had been in and out of the apartment throughout the day. Powell also testified that he heard "a lot of movement and shuffling around" in the apartment after he knocked on the door and before Defendant answered. When Powell asked Defendant if anyone else was in the apartment, Defendant answered "No," but quickly turned to head back up the stairway to "show" Powell that the apartment was empty. I find that such factors, coupled with the dangerous tactical disadvantage the officers faced at the foot of a stairway below the main area of Defendant's apartment, constitute sufficient basis to justify the officers' protective sweep of Defendant's apartment.[9]

Undoubtedly, if the officers had discovered and seized the gun and ammunition during the conduct of their protective sweep, the seizure would have been justified under the plain view doctrine. *See United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir.1999) ("[p]atently incriminating evidence that is in plain view during a proper security check may be seized without a warrant"). However, that is not what occurred here.[10] Instead, Powell dis-

---

**9.** It is worth noting that Defendant's offer to "show" Powell that no one else was in the apartment could easily be interpreted as consent for the police to enter without a warrant. However, in light of the sufficiency of evidence supporting the officers' decision to conduct a protective sweep, I do not rely on that justification alone.

**10.** The fact that the officers did not discover the gun and ammunition during their protective sweep is neither surprising nor of any moment. As the Supreme Court noted in *Buie*, a protective sweep is "aimed at protecting the arresting officers," 494 U.S. at 335, 110 S.Ct. 1093, not gathering evidence. Indeed, in response to defense counsel's pointed observation that Powell's fellow officers failed

to discover the gun and ammunition during their protective sweep of Defendant's apartment, which included entry into Defendant's bedroom, Powell testified that in his own experience "clearing rooms" he is "focused on bodies," and "looking to see if anybody is . . . hiding or looking to ambush you." Tr. 48. Powell explained that because of the circumspect nature of protective sweeps and his focus on securing an arrest site, he had, in the past, inadvertently overlooked incriminating evidence in plain view that was later discovered during the execution of a search warrant. Accordingly, I reject any inference that the officers' failure to discover the gun and ammunition during their protective sweep somehow taints Powell's later discovery of that evidence.

covered the gun after the other officers had completed their protective sweep of the apartment while he retrieved Defendant's shoes from inside Defendant's bedroom. Consequently, to satisfy the requirements of the plain view doctrine, the Government must provide justification for Powell's warrantless entry into Defendant's bedroom. To that end, the Government relies on several cases decided by courts outside of the Third Circuit, which recognize a "clothing exception" to the Fourth Amendment's warrant requirement. *See United States v. Gwinn*, 219 F.3d 326, (4th Cir.), *cert. denied*, 531 U.S. 1025, 121 S.Ct. 596, 148 L.Ed.2d 509 (2000); *see also United States v. Clay*, 408 F.3d 214 (5th Cir.2005); *United States v. Wilson*, 306 F.3d 231 (5th Cir.2002), *overruled on other grounds, United States v. Gould*, 364 F.3d 578, 586 (5th Cir.2004).

 The clothing exception purports to justify a law enforcement officer's warrantless entry into a partially clothed arrestee's home and subsequent seizure of incriminating evidence therein, when the warrantless entry is for the limited purpose of retrieving clothing or shoes for that arrestee. *Id.* The exception is a variant or subcategory of the exigent circumstances exception to the warrant requirement under which courts permit the police

to make a warrantless entry into a private dwelling to respond to a dangerous or emergency situation. *See Mincey*, 437 U.S. at 392, 98 S.Ct. 2408. After careful review, and for the reason discussed more fully below, I find that the cases cited by the Government are inapposite. Further, assuming the Third Circuit would recognize the novel clothing exception, I find its application unnecessary to justify Powell's warrantless entry into Defendant's bedroom.[11] In this case, the Government need not rely on the novel clothing exception because Defendant consented to Powell's entry into his bedroom to retrieve his shoes. Accordingly, Powell was lawfully in the bedroom when he discovered the gun in plain view, leading to his subsequent, inadvertent discovery of the bag of ammunition.[12]

The three clothing exception cases cited by the Government share a common factual element not present in this case. In each, the partially clothed arrestee never requested the clothing or shoes the police were retrieving when they discovered the disputed evidence. In *Gwinn*, the Fourth Circuit affirmed a district court's denial of the defendant's motion to suppress a gun found by police in a boot retrieved from the defendant's mobile home. 219 F.3d at 329–30. After the police conducted a protective sweep of the trailer and exited, an

**11.** I note that the clothing exception appears to expand the scope of the Supreme Court's exigent circumstances precedents beyond their plain meaning. In crafting the exigent circumstances exception, the Court conditioned its application on the existence of a dangerous or emergency situation. *Mincey*, 437 U.S. at 392, 98 S.Ct. 2408 (explaining that a warrantless entry by police into a private dwelling is justified "when [the police] reasonably believe that a person within is in need of immediate aid"). I find it a dubious proposition that the Court contemplated the evanescent risks associated with transporting a barefoot or shirtless criminal suspect to police headquarters as exigent circumstances sufficient to dispense with the Fourth Amend-

ment's warrant requirement. Indeed, typical examples of exigent circumstances recognized by the Third Circuit include, "hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of the officers or others." *United States v. Coles*, 437 F.3d 361, 366, 2006 WL 302243, *4 (3d Cir.2006). While the list enumerated in *Coles* is not exhaustive, to date, the Third Circuit has not recognized a suspect's lack of complete dress as among those exigencies fairly triggering the exception.

**12.** Defendant does not argue that the gun was not in plain view, or that Powell was not immediately aware of its incriminating nature.

officer re-entered the trailer on his own initiative to obtain boots and a shirt for the defendant, who was already handcuffed and seated in a police cruiser. *Id.* The court held that an "arrestee's partially clothed status may constitute an exigency justifying the officer's temporary re-entry into the arrestee's home to retrieve clothes reasonably calculated to lessen the risk of injury to the defendant." *Id.* at 333. The court relied on several factors it deemed created a risk of injury to the defendant, including the late hour of the arrest, the rural West Virginia setting, and the cool temperature, *id.*, and noted that, to invoke the clothing exception, "the government bears the burden of demonstrating particularly that the arrestee had a substantial need for the clothing and the government's response was limited strictly to meeting that need." *Id.* at 335.

In *Clay,* the police executed an arrest warrant at the apartment of the defendant, a parolee who had absconded from supervision. 408 F.3d at 217. After finding the defendant asleep in a back bedroom, the police allowed him to dress before escorting him from the bedroom to the living room of the apartment. *Id.* Once in the living room, an officer realized that the defendant was barefoot and, on his own initiative, asked where his shoes were located. *Id.* The defendant told the officer that his shoes were in the bedroom. *Id.* When the officer re-entered the bedroom alone to retrieve them, he discovered a bag of marijuana in plain view. *Id.* The Fifth Circuit affirmed the district court's denial of the defendant's motion to suppress the marijuana. *Id.* at 218. However, the circuit court noted the diminished privacy expectations of a parolee, and queried whether the clothing exception was necessary to justify the officer's warrantless entry into the defendant's bedroom. *Id.* Ultimately, the court assumed without deciding that the exception applied in the context of a parolee arrest, and held that

the need to procure footwear for the defendant constituted exigent circumstances justifying the officer's return to his bedroom. *Id.*

Finally, in *Wilson,* a police officer arrested an individual outside his apartment wearing only boxer shorts. 306 F.3d at 240–41. Without a request from the individual, or a warrant, the officer entered the individual's apartment to retrieve clothing for him. *Id.* at 241. Inside the apartment, the officer came upon the defendant and ordered him to stand up. When the defendant complied, the officer observed a gun sticking out of his pocket and found a second gun in a subsequent search incident to the defendant's arrest. The district court granted the defendant's motion to suppress the guns and the Fifth Circuit reversed. *Id.* The circuit court applied the clothing exception and held that the risks associated with transporting the defendant to police headquarters wearing only underwear, justified the officer's warrantless entry into the apartment and his subsequent seizure of the defendant's gun under the plain view doctrine. *Id.*

Here, I find that the testimony established that Defendant requested to go back into his apartment to retrieve shoes before being transported to police headquarters. More importantly, I accept the testimony that once inside the apartment, Defendant asked Powell to go into his bedroom to retrieve his shoes, even directing Powell to a certain pair of shoes in a particular location. That distinction is critical because Defendant's request for shoes, and consent for Powell to enter his bedroom to retrieve them, renders application of the clothing exception unnecessary in this case.

At least two Circuits have rejected the underlying rationale for the clothing exception and held that an arrestee's lack of shoes or complete dress did not create an exigency sufficient to justify departure

from the warrant requirement. *See United States v. Kinney*, 638 F.2d 941, 945 (6th Cir.), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3056, 69 L.Ed.2d 423 (1981); *United States v. Whitten*, 706 F.2d 1000, 1016 (9th Cir.1983). In *Kinney*, the Sixth Circuit held that a government agent's warrantless entry into the defendant's apartment after arresting him outside was not justified by the need to retrieve clothing for the partially clothed defendant. 638 F.2d at 945. The court concluded that the agent's warrantless entry into the defendant's apartment was unreasonable because "[t]he defendant did not request permission to secure additional clothing and did not consent to an entry of his home." *Id.* at 945.

Similarly, in *Whitten* the Ninth Circuit reversed a district court's order denying the defendant's motion to suppress a gun discovered by a police officer after the officer's warrantless entry into the defendant's hotel room to retrieve clothing. 706 F.2d at 1015–16. After arresting the defendant outside of his hotel room, wearing only underwear, the officer entered the room and handcuffed and sat the defen-

dant in a chair inside. *Id.* The defendant eventually asked to be allowed to dress, and while he did so, the agent observed narcotics in the room. *Id.* The Ninth Circuit noted that the defendant did not ask to be allowed to dress until after the officers had taken him into the room without consent, and held "[a]bsent such a 'specific request or consent,' the officers' entry was unlawful." *Id.* at 1016.

Only the Fourth and Fifth Circuits have recognized and applied the clothing exception variant of the exigent circumstances exception to the warrant requirement.[13] As noted above, the Sixth and Ninth Circuits have rejected the underlying rationale for the exception, and held that a defendant's partial state of dress does not constitute a sufficient emergency to justify a warrantless entry into that defendant's private dwelling. The Third Circuit has so far not passed on the merits of the issue. Because I conclude that application of the clothing exception is not required to justify Powell's warrantless entry into Defendant bedroom in this case, I need not predict whether the Third Circuit would recognize the novel exception.[14]

---

**13.** Although the Government notes other cases cited approvingly by the Fourth Circuit in *Gwinn*, those cases do not recognize a similarly broad, general clothing exception. *See United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir.1977) (upholding police officer's seizure of incriminating evidence under plain view doctrine after officer accompanied arrestee to her room so she could dress, and holding police had a duty to find clothing for arrestee in their custody or permit the arrestee to do so); *United States v. Titus*, 445 F.2d 577, 579 (2d Cir.1971) (holding police officers had a duty to find clothing for a nude arrestee before transporting him to FBI headquarters). *See also United States v. Butler*, 980 F.2d 619, 621–22 (10th Cir.1992) (upholding police officer's warrantless entry into an arrestee's trailer to retrieve shoes because of presence of broken glass, "several hundred beer cans," and auto parts strewn on ground, and departing from Circuit's more general rule prohibit-

ing warrantless entry into a private dwelling "solely upon the desire of law enforcement officers to complete [an] arrestee's wardrobe" in *United States v. Anthon*, 648 F.2d 669 (10th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982)). Assuming these additional cases could be interpreted as recognizing the clothing exception, a split among the Circuits remains and the Third Circuit has not taken a position.

**14.** I hasten to note, however, that support for the claim that Defendant's lack of shoes in this case amounted to an exigency is less than compelling. Here, Defendant was arrested on a summer afternoon in Glassboro, hardly comparable to the late evening arrest in a remote location in rural West Virginia in *Gwinn*. Also, there was no evidence at all of any dangerous conditions separating Defendant from the officers' cruisers. Moreover, Powell testified that were it not for Defendant's request to retrieve his shoes, he would

Instead, I am guided by the holding in *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). In *Chrisman*, a campus police officer stopped a university student outside his dormitory room, who had a bottle of gin and appeared to be underage. *Id.* at 3, 102 S.Ct. 812. The officer asked the student for identification, which the student said was in his dormitory room. *Id.* The student asked to retrieve it and the police officer informed him that he would have to accompany the student to the room, to which the student replied, "O.K." *Id.* Inside the student's dorm room, the officer noticed marijuana seeds and a pipe lying on a desk. *Id.* at 4, 102 S.Ct. 812. In the subsequent prosecution for possession, the student moved to suppress the evidence, arguing the officer violated the Fourth Amendment by entering his dorm room without a warrant. *Id.* The court denied the student's suppression motion and he was subsequently convicted. *Id.* The Supreme Court of Washington reversed the conviction, and held that the officer's warrantless entry into the student's dorm room was unlawful and rendered the plain view seizure of the evidence invalid. *Id.* at 5, 102 S.Ct. 812.

On appeal, the United States Supreme Court reversed, and held that the officer's entry into the student's dorm room was lawful. *Id.* at 7, 102 S.Ct. 812. The Court explained that incident to his arrest of the student, the officer's "need to ensure his own safety, as well as the integrity of the arrest" was "compelling" justification for him to accompany the student to his dorm room. *Id.* The Court noted that the state trial court found that the student "agreed to the officer's presence" and concluded that the officer's conduct was proper. *Id.* at 6 n. 3, 7, 102 S.Ct. 812. Since the officer was lawfully present in the dorm room,

and the seeds and pipe were in plain view therein, the Court held that his seizure of the evidence was justified under the plain view doctrine. *Id.* at 7, 102 S.Ct. 812.

Here, the only distinction from *Chrisman* is Powell's decision to leave Defendant in the custody of his fellow officers, all of whom were lawfully in the apartment to conduct a protective sweep, while entering Defendant's bedroom to retrieve his shoes. That distinction does not require a different outcome in this case. To be sure, I find that the record makes clear that Defendant requested, more than once, that Powell retrieve his shoes. I also accept Powell's testimony that Defendant even directed Powell to the particular shoes he wanted, and their specific location in the bedroom. It was entirely reasonable for Powell to leave Defendant in the custody of his fellow officers to ensure Defendant's careful supervision, while fulfilling Defendant's request. Indeed, to require Powell to have awkwardly led Defendant into the bedroom to accompany him to retrieve the shoes would impose an unnecessary burden on a law enforcement officer attempting to balance the competing interests between ensuring his own safety, and ensuring the safety of a criminal suspect rendered vulnerable by a lack of footwear.

The Supreme Court has repeatedly cautioned that in evaluating police conduct in the context of Fourth Amendment cases "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. In this case, Powell's conduct was objectively reasonable. His presence in Defendant's bedroom was

likely not have taken Defendant upstairs to do so, essentially conceding that he did not con-

sider Defendant's lack of shoes an exigency.

at Defendant's own request and, therefore lawful. Accordingly, Powell's plain view discovery of the gun and subsequent seizure of both it, and the inadvertently discovered bag of ammunition, is justified under the plain view doctrine.

## III. CONCLUSION

The police did not violate the Fourth Amendment in this case by conducting a protective sweep of Defendant's apartment, nor in entering Defendant's bedroom to retrieve shoes at his request. The protective sweep of the premises was justified by the officers' legitimate conclusion, based on articulable facts, that the arrest scene posed significant security and safety risks. Additionally, by virtue of Defendant's consent, Powell lawfully entered Defendant's bedroom for the limited purpose of retrieving shoes at Defendant's request. Once inside the bedroom, Powell had a lawful right of access to the handgun he noticed in plain view, and the bag of ammunition he subsequently discovered, both of which he lawfully seized under the plain view doctrine. Accordingly, Defendant's Motion to Suppress is denied.

An appropriate order shall follow.